# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

## CIVIL NO.  5:07CV23-T
## (5:99CR39)

| | | |
|---|---|---|
| **GREGORY E. CAPLINGER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **O R D E R** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255; the Government's answer and motion for summary judgment; and Petitioner's "Traverse and Compliance with Court Order of July 20, 2007."  For the reasons stated herein, the Government's motion for summary judgment is allowed and the Petitioner's motion to vacate is denied.

## I. PROCEDURAL HISTORY

On July 12, 1999, the Petitioner was charged with six counts of wire fraud and aiding and abetting that offense in violation of 18 U.S.C. §§ 1343

and 2.  **See Bill of Indictment, filed July 12, 1999**.  At his arraignment,

Petitioner entered guilty pleas to each of these charges without the benefit

of a plea agreement.  **See Entry and Acceptance of Guilty Plea (Rule 11**

**Proceeding), filed August 10, 1999**.  Petitioner was released on an

unsecured bond following the Rule 11 hearing.  ***See* Appearance Bond**

**and Order Setting Conditions of Release, filed August 10, 1999.**

Thereafter, Petitioner filed a motion to withdraw his guilty pleas

asserting that he had been taking prescription medication (Nubain,

Dilantin, Voltaren and Lasix) at the time he entered the pleas which

impaired his ability to enter a knowing and voluntary plea.  ***See* Motion to**

**Vacate Guilty Plea and Memorandum of Law, filed December 10, 1999;**

***see also* Supplemental Motion to Vacate Guilty Plea and**

**Memorandum, filed December 27, 1999.**  Petitioner also submitted the

opinion of a psychologist who stated that Petitioner was suffering from

depression and post-traumatic stress symptoms which "could have

contributed to a hasty, and perhaps ill-advised decision" to plead guilty.  ***Id.***

**at Exhibit B, Summary of David Dean, Ed.D., at 2.**  On January 19,

2000, following a hearing on the matter, the Court permitted Petitioner to

withdraw his plea of guilty and set a trial date of March 2000.  ***See***

**Transcript of January 19, 2000, Motion Hearing, filed January 24, 2000**.

Based on the Petitioner's assertions in his motion to withdraw his guilty pleas, the Government moved the Court to order the Petitioner to undergo psychiatric or psychological examination to determine whether or not he was suffering from a mental disease or defect that rendered him mentally incompetent to the extent that he was unable to either understand the nature and consequences of the proceedings against him and/or assist properly in his defense. **Government's Motion for Pretrial Psychiatric or Psychological Examinations, filed February 2, 2000.** The Court granted the Government's motion over Petitioner's objections, and ordered a psychiatric examination of Petitioner be conducted and a competency hearing held prior to trial.[1] ***See* Order, filed February 10, 2000**.

On March 6, 2000, the Grand Jury returned a superseding indictment charging Petitioner with two additional counts of money laundering and aiding and abetting, in violation of 18 U.S.C. §§ 1956 and 2. ***See***

---

[1] Although an oral order was entered on the record finding the Petitioner competent to stand trial, no formal order was filed. ***See* Docket Entry of March 7, 2000 ("Oral Order as to Gregory E. Caplinger, of Competency to Stand Trial[.]").**

**Superseding Bill of Indictment, filed March 6, 2000.** Thereafter,

Petitioner filed three motions to dismiss the superseding indictment, one of

which sought dismissal on the basis of vindictive prosecution. ***See* Motion**

**to Dismiss for Vindictive Prosecution, filed March 17, 2000**. Petitioner

argued that the Government sought a superseding indictment in order to

punish him for succeeding in withdrawing his guilty plea and in exercising

his constitutional right to a jury trial. *Id*. **at 3.** In response, the Government

argued that Petitioner was notified of its intention to seek a superseding

indictment at the next grand jury session in March 2000 by letter to his

attorney dated February 22, 2000. The letter also identified the specific

charges that would be brought, the statutory basis for such charges, and

noted that the charges arose "out of existing discovery" based upon "a new

found theory of prosecution." ***See* Government's Response to**

**Defendant's Pre-Trial Motions, filed March 24, 2000, at 11 (quoting**

**February 22, 2000 letter).** After a hearing on April 17, 2000, the Court

denied all Petitioner's motions to dismiss, including that for vindictive

prosecution, noting a "pretrial decision by a prosecutor to seek a harsher

indictment of a defendant [who] refuses to negotiate or accept a plea

bargain does not constitute prosecutorial vindictiveness." ***See* Order, filed**

May 1, 2000, at 5 (citing *United States v. Goodwin*, 457 U.S. 368, 378-79 (1978))**.**

Petitioner's jury trial began on July 17, 2000.  On the morning of July 25, 2000, after the evidence had concluded and closing arguments were to begin, the case was called and the Petitioner failed to appear.  *See* **Transcript of Trial Proceedings, Vol. III, at 743.**  Out of the presence of the jury, Petitioner's bond was revoked and a bench warrant was issued for his arrest.  *Id*. **at 744.**  The Court inquired of Petitioner's counsel if he wished to complete the trial; counsel advised the Court that he wished to do so.  *Id*. **at 746.**  No mention of the Petitioner's absence was made to the jury and the trial was concluded that afternoon.  The jury subsequently returned a verdict of guilty as to all counts.  **Verdict Form, filed July 25, 2000.**

The Petitioner was eventually apprehended in the Dominican Republic on June 26, 2001.  He appeared before U.S. District Court Judge Thomas A. Wiseman, Jr., who had presided over Petitioner's trial, on October 30, 2001, for sentencing.  The presentence report calculated the base offense level for the six wire fraud charges to be 6, which was enhanced by 12 levels based on a loss amount of $1.8 million.  **Third**

**Revised Presentence Investigation Report, dated October 16, 2001, at 16.** The report also recommended three, 2 point enhancements based on the fact that the offense involved more than minimal planning, the fact that the Petitioner developed a "persona" of a position of trust, *i.e.*, a physician, which facilitated the commission and concealment of the offense; and for obstruction of justice (absconded during his trial), which yielded an adjusted offense level of 24 for the wire fraud counts. *Id.* With respect to the two money laundering counts, the report calculated a base offense level of 23, enhanced by 5 levels based on the $1.8 million loss, and two, 2 point enhancements based on the abuse of a position of trust factor and obstruction of justice, yielding an adjusted and total offense level of 32. *Id.* **at 16-17.** Based on a criminal history category of II and an offense level of 32, the report recommended a Sentencing Guideline range of imprisonment of 135 to 168 months. *Id.* **at 24.**

Judge Wiseman sentenced the Petitioner to 60 months imprisonment on each of the wire fraud charges (Counts 17 through 22) to run concurrently and 168 months imprisonment on each of the money laundering charges (Counts 23 and 24), to run concurrently with each other

and with the sentences imposed for Counts 17 through 22. **See Judgment in a Criminal Case, filed December 3, 2001.**

Petitioner timely appealed his money laundering convictions and sentence to the Fourth Circuit Court of Appeals. On August 11, 2002, the Fourth Circuit affirmed the Petitioner's convictions, but vacated and remanded the case for resentencing. **See United States v. Caplinger, 339 F.3d 226, 238 (4th Cir. 2003).** Specifically, the Court found the district court had committed error "in assessing [Petitioner] with a two-level enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust."[2] **Id. (footnote added).** The Petitioner's sentence was vacated, and this Court was directed to resentence the Petitioner without the enhancement for abuse of a position of trust. **Id**.

_____

[2] In the Circuit's review of the district court's grouping of these charges, the Court noted that Amendment 634 to the Sentencing Guidelines, which went into effect two days after Petitioner's sentencing, provided for the grouping of money laundering counts and counts for the underlying offense under § 3D1.2(c) rather than § 3D1.2(d). **Caplinger, 339 F.3d at 234.** However, the Circuit also noted Amendment 634 did not apply retroactively, thereby precluding Petitioner of any benefit from the Amendment. **Id. at 235**.

On April 4, 2005, the undersigned conducted Petitioner's
resentencing hearing.[3]  Prior to announcing its sentence, the Court noted
that while it was no longer bound by the Sentencing Guidelines pursuant to
the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220
(2005), the Guidelines were consulted in accordance with that decision.
The Court also stated that it had taken into consideration the factors set
forth in 18 U.S.C. § 3553(a), including the seriousness of the offense,
Petitioner's criminal history, the need to promote respect for the law, and
Petitioner's post-conviction behavior in prison.  *See* **Transcript of
Sentencing Hearing held April 4, 2005, filed June 14, 2005, at 12-13.**
The Court then sentenced the Petitioner to a term of 124 months
imprisonment on the money laundering charges, leaving the remaining
parts of the original judgment unchanged.  **Amended Judgment in a
Criminal Case, filed April 27, 2005**.

Petitioner appealed this sentence, arguing that his inability to benefit
from the change in the money laundering sentencing guidelines violated

---

[3] The Petitioner waived his presence at the resentencing hearing.
*See* **Motion to Allow Waiver of Presence at Resentencing, filed
February 22, 2005; Order, filed February 24, 2005 (allowing waiver of
presence); Waiver of Appearance of Defendant at Resentencing, filed
March 4, 2005.**

the U.S. Constitution's *Ex Post Facto* Clause.  ***United States v. Caplinger*, 155 F. App'x 730 (4th Cir. 2005).**  The Fourth Circuit disagreed and affirmed this Court's judgment.  ***Id*. at 732.**

Petitioner alleges in his timely filed § 2255 motion that the Government is guilty of prosecutorial misconduct in obtaining a superseding indictment in retaliation for the withdrawal of his guilty plea thereby violating his Fifth Amendment rights.  He also alleges he received ineffective assistance of counsel because his attorney misinformed him of his potential exposure in prison if he chose to withdraw his guilty plea, and counsel did not advise him of a plea offer by the Government that Petitioner contends he would have accepted had he known of its existence.


**II. STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment when the pleadings and other relevant documents reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  ***See, e.g. Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v.**

*Liberty Lobby, Inc.*, **477 U.S. 242, 252 (1986);** *Matsushita Elec. Indus.*
*Co. v. Zenith Radio Corp.*, **475 U.S. 574, 587 (1986);** *Miller v. Leathers*,
**913 F.2d 1085, 1087 (4ᵗʰ Cir. 1990).**

A genuine issue exists only if "the evidence is such that a reasonable
jury could return a verdict for the non-moving party." *Anderson*, **477 U.S.**
**at 248.** However, the party opposing summary judgment may not rest
upon mere allegations or denials and, in any event, a "mere scintilla of
evidence" is insufficient to overcome summary judgment." *Id.* **at 252.**


## III. ANALYSIS

### A.    Petitioner's claim of prosecutorial misconduct is procedurally barred

Petitioner's failure to challenge on direct appeal his claim of
prosecutorial misconduct bars any review under § 2255. A claim raised for
the first time in a § 2255 petition is generally not cognizable in federal
courts. *See United States v. Landrum*, **93 F.3d 122, 124 (4ᵗʰ Cir. 1996).**
"Habeas review is an extraordinary remedy and will not be allowed to do
service for an appeal." *Bousley v. United States*, **523 U.S. 614, 621-22**
**(1998).** "In order to collaterally attack a conviction or sentence based upon

errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." ***United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)); *see also*, *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).**

"Cause . . .  requires a showing of some external impediment preventing counsel from constructing or raising the claim." ***Murray v. Carrier*, 477 U.S. 478, 492 (1986); *see also*, *Turner v. Jabe*, 58 F.3d 924, 927 (4th Cir. 1995).** In order to establish "actual prejudice" the defendant must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." **Frady, 456 U.S. at 170.** Actual innocence means factual innocence, not merely legal insufficiency. ***Bousley*, 523 U.S. at 623**. In order to establish actual innocence, Petitioner must show that based on all the evidence "it is more likely than not that no reasonable juror would have convicted him." ***Id.* (quotation omitted).**

In the instant case, Petitioner states that he did not raise the issue on direct appeal because his counsel was ineffective in failing to do so. The Court notes that although this is a convenient excuse, it is unlikely that Petitioner, having benefit of not one but two appeals, failed to raise the issue in either appeal. Moreover, counsel raised the issue of prosecutorial vindictiveness during the pretrial proceedings and the Court denied the motion to dismiss the indictment on those grounds. ***See* Order, filed May 1, 2000,** *supra***, at 5 (the pretrial decision by a prosecutor to seek a harsher indictment of a defendant after that defendant refuses to negotiate or accept a plea bargain does not constitute prosecutorial vindictiveness) (citing *United States v. Goodwin*, 457 U.S. 368, 378-79 (1978).** Petitioner's counsel most likely did not include this issue in the appeal because it is without merit. The Court acknowledged that the Government filed the superseding indictment on the first day of the Court's trial term, but also noted that Petitioner (through counsel) was provided two weeks' notice of the Government's intent to seek the superseding indictment when the Grand Jury reconvened. *Id*. The Petitioner did not then or does not now create a presumption of vindictiveness.

Petitioner's claim of prosecutorial vindictiveness is procedurally barred. Moreover, even if such claim were not barred, the claim is without merit. Petitioner has not created a presumption of vindictiveness and the case law is clear that the Government may seek a harsher indictment after a defendant refuses to negotiate or accept a plea bargain. ***Goodwin, supra.***

**B.    Ineffective Assistance of Counsel Claims**

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, <u>and</u> that he was prejudiced thereby. ***Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)**. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. ***Id.* at 689; *see also Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977).**

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. *Sexton v. French*, **163 F.3d 874, 882 (4ᵗʰ Cir. 1998)**. Rather, the Court "can only grant relief under . . . *Strickland* if the 'result of the proceeding was fundamentally unfair or unreliable.'" *Id.* **(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993)).** Under these circumstances, the petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, **956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430-31).**

Petitioner claims that his counsel was ineffective for misinforming him as to the potential sentence he could receive and for failing to communicate the Government's plea offer to him.

With respect to this claim, the Petitioner has filed an affidavit from his mother, who is not a party to this case, in support of this contention. *See* **Affidavit of Neva M. Caplinger, filed August 15, 2007**. Notably, Petitioner has not provided his own affidavit in this regard, but offers only conclusory allegations. However, Harold Bender, Petitioner's trial counsel, avers that any and all pleas were presented to Petitioner as they were made, but that Petitioner indicated no willingness to engage in plea

discussions.  **Exhibit 7, Affidavit of Harold J. Bender,** *attached to*

**Government's Answer to Petitioner's Motion to Vacate, filed July 12,**

**2007, ¶ 10.**  According to Mr. Bender, Petitioner continued to maintain his

innocence and insisted on a trial "even though his medical education and

credentials appeared to have been purchased from what is commonly

referred to as a 'diploma mill'."  *Id.* **¶ 14**.  Due to the Petitioner's insistence

on a trial, "regardless of the consequences, [Mr. Bender] undertook

extensive trial preparation."  *Id.* **¶ 11**.

 Regardless of what Petitioner's medical education or background is,

he demonstrated a keen knowledge of the legal system by initially entering

guilty pleas, against his counsel's advice, so that he could be released on

bail, and then developed a theory of "pharmaceutical drug withdrawal" to

wiggle out of those pleas.  **See August 10, 1999 Transcript at 2, 4, 9, 14;**

*see also***, Bender Affidavit,** *supra***, ¶ 7 ("Caplinger called me and**

**wanted to withdraw his guilty plea.  [He] found a**

**psychologist/psychiatrist who would testify that he was suffering**

**from pharmaceutical drug withdrawal and was under great stress at**

**the time of the entry of his guilty plea [so he] did not knowingly and**

**wilfully enter his plea.").**

The Court finds Petitioner has not satisfied either prong of the *Strickland* test as to this claim, has provided the Court with only conclusory allegations, and the same is denied.

Next, Petitioner contends that his counsel misadvised him as to the maximum sentence he faced. Specifically, Petitioner contends that counsel advised him that his maximum exposure was 60 months imprisonment, and if he had known it was much higher, he would not have chosen to go to trial.

A review of the pertinent transcripts of this case show there was confusion regarding the length of Petitioner's potential sentence. At his Rule 11 hearing, the Petitioner was advised that he faced a maximum sentence of five years. ***See, Transcript of Proceedings before Hon. H. Brent McKnight, held August 10, 1999, filed December 10, 1999.***

| Mr. Whisler: | The maximum penalty would be a five-year term of imprisonment, a $250,000 fine, or both. |
| The Court: | That is per count? |
| Mr. Whisler: | Yes. |
| The Court: | All right. So, if he's facing six counts, he would be facing 30 years and six times $250,000? |
| Mr. Whisler: | Actually under the guidelines, what would occur is since the offenses are grouped, he would still be subject to a maximum of five years because the conduct is all grouped. So precisely one or six |

| | counts, he'd still be facing a maximum of five years, $250,000 fine. |
|---|---|
| The Court: | And a five-year term of supervised release up to five years. |
| Mr. Whisler: | Yes. |
| The Court: | Somewhere in the neighborhood of five years. |
| Mr. Whisler: | Correct, at the very most. |
| The Court: | Mr. Bender, is that also your understanding, sir? |
| Mr. Bender: | That is my understanding, Your Honor. |

*Id.* **at 23-24.**  However, at the hearing on Petitioner's motion to withdraw his guilty plea, the Government conceded that it had contributed to that confusion.  *See* **Transcript of Motion Hearing held January 19, 2000,** *supra***, at 9 ("Mr. Whisler: . . . I aided and abetted in this because I didn't pick this up at the plea hearing.  The defendant was told that the maximum amount of time he could receive on all six counts of the wire fraud was five years, which** *technically is not true.*  **He has a statutory maximum of five years on each of the six counts and therefore technically he would be eligible for a 30-year statutory max which would require, of course, departures.  But that is the most accurate assessment of his maximum.") (emphasis added).**  After hearing the evidence and arguments, Judge Voorhees ruled that the Petitioner may have been misled at the Rule 11 hearing that he was facing a five year term versus a 30 year maximum term and this factor was one of

several that weighed in favor of granting the Petitioner's motion to withdraw his plea. *Id.* **at 67, 77**. Therefore, the Court eliminated any confusion regarding the potential punishment Petitioner faced well before his trial began. Moreover, Mr. Bender's affidavit makes clear that Petitioner "rejected each and every [plea offer] and insisted on proceeding to trial." **Bender Affidavit,** *supra*, **¶ 14**. Therefore, Petitioner was not prejudiced by any miscalculation by his attorney of his potential sentence and his claim, therefore, must fail.

## C. New Claim raised in Petitioner's Opposition to Government's Motion for Summary Judgment

In Petitioner's opposition to the Government's motion for summary, he raises for the first time an additional ineffective assistance of counsel claim alleging his attorney failed to object to the sentencing enhancement for abusing a position of trust.[4] Such claim was not included in his original

---

[4] Even though the claim will not be addressed, the Court notes, as a factual matter, that Petitioner is mistaken. His counsel strenuously objected to the enhancement based on an abuse of a position of trust. *See* **Transcript of Sentencing Hearing held October 30, 2001, filed April 9, 2002, at 15-22, 26-27.** In addition, it was on this ground that the Fourth Circuit vacated and remanded the Petitioner's case, directing the district court to resentence the Petitioner without this enhancement. ***See Caplinger,*** **339 F.3d at 238.**

motion and, therefore, the Government did not include a response to such

claim in either its answer or motion for summary judgment. Therefore, the

claim is not properly before the Court and is summarily denied.[5]


## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Petitioner's motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and the

Government's motion for summary judgment is **GRANTED.** A Judgment

dismissing this action is filed herewith.

---

[5] Even if Petitioner were to file a motion to amend, such motion would be denied. Indeed, Petitioner's case became final for purposes of collateral review in March 2007. Petitioner's opposition to the Government's motion for summary judgment, which included a claim not raised in Petitioner's original motion, was filed on August 15, 2007 – well beyond the Antiterrorism and Effective Death Penalty Act's one-year limitation period. **28 U.S.C. § 2255.** Furthermore, Petitioner's new claim of ineffective assistance of counsel does not relate back to the claims raised in his initial motion. *See United States v. Pittman*, **209 F.3d 314 (4th Cir. 2000);** *see also United States v. Craycraft*, **167 F.3d 451, 456-57 (8th Cir. 1999) (counsel's failure to file an appeal as instructed did not relate back to ineffective assistance of counsel claims for failure to pursue a downward departure and to object to the types of drugs at issue);** *United States v. Duffus*, **174 F.3d 333 (3d Cir. 1999) (ineffective assistance of counsel claim for failure to move to suppress evidence did not relate back to several ineffective assistance of counsel claims in his original motion).**

20

Signed: July 8, 2008

Lacy H. Thornburg
United States District Judge